|  |  |
|---|---|
| AMANDA CAROL PITRE,<br>*Plaintiff,*<br><br>v.<br><br>NANCY A. BERRYHILL, DEPUTY<br>COMMISSIONER OF OPERATIONS,<br>*Defendant.* | No. 3:17-cv-1533 (VAB) |

## RULING AND ORDER ON MOTION TO REVERSE THE DECISION OF THE COMMISSIONER AND MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

Amanda Carol Pitre filed a Social Security disability and supplemental security income claim under Section 205(g) of the Social Security Act, as amended by 42 U.S.C. § 405(g), which was denied. Ms. Pitre has now filed a motion to reverse the decision of the Social Security Administration. In response, Nancy Berryhill, Deputy Commissioner for Operations ("Commissioner"), has moved for an order affirming the Commissioner's decision.

For the following reasons, the Court **DENIES** Ms. Pitre's motion to reverse the decision of the Commissioner and **GRANTS** the Commissioner's motion to affirm.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Factual Allegations

Before her alleged disability, Ms. Pitre worked as an assistant preschool teacher for two hours a day, five days per week. Answer with Tr. at 359, ECF No. 14 ("Tr."). In this job, she spent approximately half an hour each day walking, standing, sitting, climbing, stooping, kneeling, crouching, handling large objects, handling small objects and reaching. Tr. at 360. Due

to complex regional pain syndrome, she alleges bouts of severe burning pain in her back, both legs, and feet, which have limited her mobility. Tr. at 376, 377.

On February 3, 2014, Amanda Carol Pitre filed a Title II application for a period of disability, disability insurance, and a Title XVI application for supplemental security income, claiming that her disability began on August 1, 2013. Tr. at 19; Tr. 313. During her first denial, on April 1, 2014, doctors and disability specialists determined that Ms. Pitre was ineligible to receive disability benefits. Tr. at 220. After a request for reconsideration, Ms. Pitre's claim was again denied on October 27, 2014. Tr. at 231–33, 235–38.

### 1. Amanda Pitre's Medical History

Ms. Pitre allegedly suffered from complex regional pain syndrome, a learning disability, anxiety, asthma, seizures, and a kidney disorder that causes a salt, magnesium, potassium and electrolyte deficiency called Gitelman Syndrome. Tr. at 358. Ms. Pitre claimed to take seven medications for her various disorders. Tr. at 361. At the time of her Social Security application, Ms. Pitre was living with her parents. Tr. at 369. When asked to detail her daily activities, Ms. Pitre noted that she went to school on Mondays and Wednesdays, read, did homework, watched television, worked on her computer, and sometimes served as a babysitter. *Id.* She also took care of animals. *Id.*

Ms. Pitre claimed that her illnesses caused her to quit her job as a teacher's assistant because it had become painful to walk, move around, and lift heavy things; she also had difficulty sleeping. Tr. at 370, 372. Her illnesses allegedly hindered her lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing. Tr. at 373. Because of her ailments, Ms. Pitre claimed that she has had to use crutches, a walker, a wheelchair, and a

cane. Tr. at 375. Nevertheless, Ms. Pitre acknowledged that she could manage her hair with assistance, dress herself, bathe herself, feed herself, and use the restroom on her own. Tr. at 370.

The Administrative Law Judge ("ALJ") determined that "the medical record reveal[ed] that the claimant ha[d] been evaluated and treated for asthma, Gitelman Syndrome, headache syndrome, tonsillectomy, seizures, and hyperlipidemia." Tr. at 22.

On December 10, 2014, Ms. Pitre filed a written request for a hearing by an Administrative Law Judge. Tr. at 239–41.

### 2.    Amanda Pitre's Testimony

On July 15, 2016, Ms. Pitre, represented by counsel, testified before the ALJ. Tr. at 19.

At the hearing, Ms. Pitre testified that she graduated from high school and Gateway Community College. Tr. at 27, 95. While she ultimately dropped out due to a self-described mental breakdown, Ms. Pitre also testified that she had attended Southern Connecticut State University. *Id.* Since 2015, she had not re-enrolled. Tr. at 97.

Ms. Pitre testified that she suffers from Gitelman Syndrome, which is a salt deficiency that limits her ability to retain sodium. Tr. at 100–01. The disease required her to see her doctor every two weeks and get blood work done every week. Tr. at 101. According to Ms. Pitre, the condition led to a November 7, 2014 hospitalization at the Yale New Haven Hospital. Tr. at 102–03. Due to the Gitelman Syndrome, Ms. Pitre began seeing Dr. Robert Moskowitz for yearly electrocardiogram tests.

In addition to Gitelman Syndrome, Ms. Pitre testified that she has complex regional pain syndrome or reflex synthetic dystrophy syndrome, a nerve disorder that causes severe burning pain throughout her neck, back, and lower legs. Tr. at 109. The disease and corresponding pain

limited Ms. Pitre's ability to walk more than short distances, caused fatigue, and led to the use of stabilizing braces on her legs. Tr. at 139.

Ms. Pitre also testified that she had a non-epileptic seizure disorder. Tr. at 111, 112. Because of her seizure disorder and newly prescribed leg braces, Ms. Pitre stopped driving approximately one month before the ALJ hearing. Tr. at 112–15.

Ms. Pitre testified that she took medication for high cholesterol, allergies, acid reflex, asthma, and inability to sleep. Tr. at 117.

When asked about her daily routine, Ms. Pitre testified that she got up between 9:30 a.m. and 10:00 a.m., unless she has a doctor's appointment. Tr. at 115, 138. Ms. Pitre also testified that she has not been paid for work since August 2013, when she resigned from her job at a day care facility. Tr. at 148. In the years since, Ms. Pitre's only income has been derived from working as a babysitter for two boys whose parents she met at church, which she allegedly stopped doing in March 2016. Tr. at 150–52.

### 3.    Medical Evidence

On July 19, 2016, Ms. Pitre's primary care provider, Ann Celeste Mapas-Dimaya, M.D., wrote to the ALJ that Ms. Pitre had "physically disabling conditions such as reflex sympathetic dystrophy causing chronic pain and Gitelman syndrome, which is a rare genetic disorder affecting the kidneys." Tr. at 42. Dr. Mapas-Dimaya indicated that Ms. Pitre was "incapable of being successfully employed due to debilitating symptoms from both conditions" and "recommended continued insurance coverage for [Ms. Pitre] past the age of 26, as she is still unmarried, and fully dependent on the support of her parents." *Id.*

On September 30, 2016, Ms. Pitre's counsel submitted notes from Ms. Pitre's July 26, 2016 cardiac visit. Tr. at 44. The notes detail that the reason for the visit was a follow-up for

chest pains and palpitations, which required another follow up around August 23, 2016. *Id.* The notes indicate that Ms. Pitre had to keep taking medications the same way and that the "list has 4 medication(s) that are the same as other medications prescribed to you." Tr. at 45, 46.

On the same day, Ms. Pitre's counsel also submitted evidence that Ms. Pitre was a resident at the Milford Health and Rehabilitation Center from November 7, 2014 until December 3, 2014. Tr. at 85.

### 4.    Vocational Expert Testimony

At the July 15, 2016 hearing, Ruth Baruch testified by telephone as a vocational expert. Tr. at 19. She testified that Ms. Pitre's "work as a day care worker [was] not past *relevant* work because; she did not perform this work at the level of substantial gainful activity." Tr. at 31 (emphasis in original). Ms. Baruch testified that someone fitting Ms. Pitre's medical profile would be unable to perform her past work as a daycare worker. Tr. at 160.

Alternatively, Ms. Baruch testified that someone fitting Ms. Pitre's medical profile would be able to find a number of jobs in the national and regional economy. Tr. at 160–61. For example, there are 3,356 available jobs in Connecticut and 214,689 available jobs nationally for price makers; there are 345 available jobs in Connecticut and 22,112 jobs nationally for hand packagers; there are approximately 361 available jobs in Connecticut and 5,244 available jobs nationally for electrical assemblers. Tr. at 161. Ms. Baruch further testified that an individual with leg braces and Ms. Pitre's medical profile would still be eligible for the same jobs in the state and national economies. *Id.*

### 5.    The ALJ's Decision

After consideration of the of the record, the ALJ determined that:

1.  Ms. Pitre met the insured status requirements of the Social Security Act, Tr. at 22;

2. Ms. Pitre was not engaged in substantially gainful activity from August 1, 2013 until the ALJ decision, *id.*;

3. Ms. Pitre had severe impairments related to complex regional pain syndrome and a learning disorder where "objective evidence in the medical record of impairments that are non-severe in that such impairments establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to meet the basic demands of work activity," *id.*;

4. Ms. Pitre did not have an impairment or combination of impairments that met the severity requirements of 20 C.F.R., Part 404, Subpart P, Appendix 1, which the ALJ determined only amounted to some "mild restriction" in daily living and "mild difficulties" in social functioning, Tr. at 24, 25;

5. Although she may need to frequently, balance, stoop, kneel, crouch, and climb ramps or stairs, Ms. Pitre has the residual functional capacity to perform light work under 20 C.F.R. 414.1567(b) and 416.967(b), Tr. at 26;

6. Ms. Pitre had no past relevant work, Tr. at 31;

7. Ms. Pitre was considered a younger individual for her disability determination, *id.*;

8. Ms. Pitre had at least a high school education and the ability to communicate in English, *id.*;

9. Transferability of job skills was not an issue because Ms. Pitre did not have past relevant work, *id.*;

10. Based on Ms. Pitre's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers within the national economy that she can perform, *id.*; and

11. Ms. Pitre was not disabled from August 1, 2013 through the date of the ALJ's decision, Tr. at 32.

Based on Ms. Pitre's medical history, the ALJ determined that Ms. Pitre had only mild symptoms that were controlled by taking prescribed supplements. Tr. at 23. The ALJ also determined that "hospital treatment notes from 2012 show that the claimant was treated with supplements and that she needed to take her supplements more regularly." Tr. at 22. "In December 2013, the claimant reported doing well and she was scheduled for a routine follow up in six months." *Id.* In March 2014, Ms. Pitre declined supplements after going to the emergency room for mild hypomagnesia. *Id.* Ms. Pitre was assessed as stable after being given supplements for hypokalemia. *Id.* In June 2016, Ms. Pitre was determined to be stable after a cardiac workup for Gitelman Syndrome.

The ALJ gave more weight to certain medical testimony in making the residual functional capacity determination than others. The ALJ gave significant weight to the opinion of Henry Scovern, M.D. because of his "understanding of our disability programs and their evidentiary requirements, as well as familiarity with other information in the record." Tr. at 30. The ALJ also gave great weight to the opinion of Firooz Golkar, M.D., "who indicated that the claimant could perform a range of light exertional work . . . because Dr. Golkar included postural and environmental limitations that [were] supported with evidence submitted at Reconsideration." *Id.* Finally, the ALJ gave significant weight to Warren Leib, Ph.D., at the initial phase and Christopher Leveille, Psy.D., at the reconsideration phase because "they ha[d] an understanding of our disability programs and their evidentiary requirements" and the claimant's evidence "d[id] not contradict the findings of the State agency psychological consultants." *Id.*

The ALJ concluded that Ms. Pitre was not eligible for disability, disability insurance benefits, or supplemental security income as of August 1, 2013, the date requested on her February 3, 2014 application. Tr. at 33.

### 6.    Social Security Appeal

The Social Security Administration Appeals Council denied Ms. Pitre's request for review because it "found no reason under our rules to review the Administrative Law Judge's decision," *see* Tr. at 19, and concluded that Ms. Pitre "ha[d] not been under a disability, as defined by the Social Security Act, from August 1, 2013, through the date of decision." Tr. at 32.

At the time of her appeal, Ms. Pitre attested to her kidneys not functioning well and that she may have to have a central line placed for medication. Tr. 385. She also allegedly lost her ability to walk. *Id.*

### B.    Procedural History

On September 12, 2017, Amanda Pitre filed a Complaint against Nancy Berryhill, the then-Acting Commissioner of the Social Security Administration. Compl., ECF No. 1. On December 21, 2017, Commissioner Berryhill answered Ms. Pitre's Complaint. ECF No. 14.

On March 13, 2018, Ms. Pitre moved to reverse the decision of the Commissioner. ECF No. 18. On July 3, 2018, the Defendant moved to affirm the Commissioner's decision. ECF No. 25.

## II.    STANDARD OF REVIEW

To find disability under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than [twelve] months." *Smith v. Berryhill*, 740 F. App'x.

721, 722 (2d Cir. 2018) (summary order) (citing 20 C.F.R. § 404.1505(a)).

In order to determine whether a claimant is disabled, the ALJ must follow a five-step

evaluation process:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117,

120 (2d Cir. 2008); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v)). In disability cases,

"the claimant has the general burden of proving that he or she has a disability within the meaning

of the Act, and bears the burden of proving his or her case at steps one through four," *see*

*Burgess*, 537 F.3d at 128 (internal quotation marks and citation omitted), with Step Five "the

burden shift[ing] to the Commissioner to show there is other work that [the claimant] can

perform." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security]

pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an

appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "In reviewing a

final decision of the SSA, this Court is limited to determining whether the SSA's conclusions

were supported by substantial evidence in the record and were based on the correct legal

standard." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. §

405(g)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brown v. Apfel*, 174 F.3d 59, 61 (2d Cir. 1999) (internal quotation marks omitted) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). To determine "whether the agency's findings are supported by substantial evidence, 'the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). When "the Commissioner's decision applies the correct legal principles and is supported by substantial evidence, that decision will be sustained." *Kumar v. Berryhill*, 3:16-cv-1196 (VLB), 2017 WL 4273093, at *4 (D. Conn. Sept. 26, 2017) (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)).

## III. DISCUSSION

The claimant bears the burden of proving that he or she is disabled throughout the period for which benefits are sought. *See* 20 C.F.R. § 404.1512(a). "The ultimate determination of whether a person has a disability within the meaning of the Act belongs to the Commissioner." *Greek v. Colvin*, 802 F.3d 370, 374 (2d Cir. 2015) (citing *Snell v. Apfel*, 177 F.3d 128, 133–34 (2d Cir. 1999)). A reviewing court "may set aside the Commissioner's decision only if it is based upon legal error or if its factual findings are not supported by substantial evidence in the record as a whole." *Id.* at 374–75 (citing *Burgess*, 537 F.3d at 127 (2d Cir. 2008); 42 U.S.C. § 405(g)).

Even when a claimant is represented by counsel, an ALJ must "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009) (quoting *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999)). A record is fully developed when it is "detailed enough to allow the

ALJ to determine whether the claimant's residual functional capacity." 20 C.F.R. § 404.1513(e)(1)-(3). In doing so, the ALJ must make "every reasonable effort" to obtain medical reports from a claimant's healthcare providers. 20 C.F.R. §§ 404.1512(d), 416.912(d).

Generally, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). In the event an ALJ fails to develop a record, however, "the issue is whether the missing evidence is significant." *Santiago v. Astrue*, No. 3:10-cv-937, 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing *Pratts v. Chater*, 94 F.3d 34, 37–38 (2d. Cir. 1996)).

### A.    Development of the Administrative Record

An ALJ considering a Social Security claim has an "affirmative duty to compile a complete record" when ruling on eligibility. *Brown*, 174 F.3d at 63. An ALJ is tasked with "not only develop[ing] the proof but carefully weighing[ing] it." *Donato v. Sec'y. of Dep't. of Health and Human Servs.*, 721 F.2d 414, 419 (2d Cir. 1983). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)).

On appeal, district courts "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Id.* (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)). The district court may not "affirm an administrative action on grounds different from those conducted by the agency." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

Ms. Pitre argues that that the record is devoid of any medical source statement from any of her medical providers: Dr. Neera Dahl, who treated Ms. Pitre for Gitelman Syndrome and renal issues from July 2013 until July 2014; Dr. Srinath Kadimi, who was Ms. Pitre's neurologist until June 2014; Dr. Jasdeep Sidana, who was Ms. Pitre's pulmonologist from January 2014 until July 2016; or Dr. Sue Chang, who began overseeing Ms. Pitre's Gitelman Syndrome care after August 12, 2014. Without testimony from these treating sources about Ms. Pitre's residual functional capacity, she argues that the ALJ failed to develop the administrative record.

In response, the Commissioner argues that the lack of medical source statements does not render the record incomplete. Moreover, the Commissioner argues that the record need only be developed to the point of allowing the ALJ to make an informed finding. And the Commissioner believes that the ALJ had sufficient evidence to reach the residual functional capacity determination because the extensive medical records were substantial evidence to support the ALJ's finding.

The Court agrees.

Here, the extensive medical records available to the ALJ for review are sufficient to make a residual functional capacity determination. As the Commissioner notes, more than half of the record is made up of Ms. Pitre's medical records. Moreover, medical records from each of the Doctors Dahl,[1] Kadimi,[2] and Sidana[3] were all included in the ALJ record. In addition, there was a treating source statement from Dr. Chang,[4] who was Ms. Pitre's treating physician for Gitelman Syndrome at the time of the ALJ hearing.

---

[1] Ex. 5F, Tr. 543–552; Ex. 11F, Tr. at 583–88; Ex. 12F, Tr. at 589–612; Ex. 18F, Tr. 745–54; Ex. 20F, Tr. at 763-882.
[2] Ex. 6F, Tr. 553–56; Ex. 7F, Tr. 557–72; Ex. 16F, Tr. 712–23; Ex. 17F, Tr. at 724–44.
[3] Exs. 13F, Tr. at 589 – 612; Ex. 33F, Tr. at 1035–36; Ex. 37F, Tr. at 1123–39.
[4] Ex. 28F, Tr. at 986–87.

Although the record does not contain formal opinions on Ms. Pitre's residual functional capacity from her treating physicians, the breadth and depth of medical records available from both before and during the alleged disabling period were adequate for the ALJ to assess residual functional capacity. *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) ("Given the specific facts of this case, including a voluminous medical record assembled by the claimant's counsel that was adequate to permit an informed finding by the ALJ, we hold that it would be inappropriate to remand solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity.").

Given the extensive medical history available to the ALJ and the evaluation of Dr. Susan Chang as well as the opinions of the state agency reviewing doctors, the substantial evidence supports the ALJ's development of the administrative record. *Shaw*, 221 F.3d at 131 ("On appeal, we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied.").

### B.     Treating Physician Rule

The treating physician rule gives "deference to the views of the physician who has engaged in the primary treatment of the claimant." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). Under the treating physician rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess*, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Greek*, 802 F.3d at 375. Failure to provide "'good

reasons' for not crediting the opinion of a claimant's treating physician" can be a basis for remand. *Id.* at 129–30 (quoting *Snell*, 177 F.3d at 133).

Within the ALJ's affirmative duty to develop the administrative record, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). There are, however, cases where the treating physician should not be provided controlling weight. *See, e.g.*, *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (holding that "the option of treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in support, such as the opinions of other medical experts").

Ms. Pitre argues that the ALJ's limited use of Dr. Chang's opinion as a treating physician, coupled with the weight given to the state's psychiatric and physician witnesses, is improper because those document reviewers never met or examined Ms. Pitre.

In response, the Commissioner argues that the residual functional capacity is assessed based on relevant evidence in the record. And the objective evidence failed to support Ms. Pitre's allegations that her disabling symptoms were beyond what was accommodated for in the residual functional capacity assessment.

The Court agrees.

Here, the Court finds that the treating physician was inconclusive as to Ms. Pitre's residual functional capacity; thus, the ALJ's use of the rest of the substantial evidence in the record to make the functional capacity determination was proper.

Dr. Chang wrote that Ms. Pitre's Gitelman Syndrome was characterized by hypokalemia and hypomagnesemia, which are "electrolyte disorders [that] lead to severe muscular weakness

affecting her extremities and palpitations." Tr. at 987. "Despite aggressive therapy requiring high doses of magnesium and potassium, in addition to other medication (Amiloride and Spironolactone), she [was] often ill, [which led] to multiple ER visits." *Id.*.

While these general conclusions may offer some guidance for the ALJ to make functional capacity determinations, the statements, alone, do not provide enough information for an ALJ to make a complete determination. Instead, application of vocational and residual functional capacity over the course of an eight-hour workday are the province of the ALJ. 20 C.F.R. 404.1527 (d)(2) ("Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, your residual functional capacity (see §§ 404.1545 and 404.1546), or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.").

Likewise, the ALJ has wide latitude in making residual functional capacity determinations. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Within that latitude, the ALJ evaluated testimony from four experts, in addition to Dr. Chang's medical assessment.

First, after reviewing Ms. Pitre's medical record, Dr. Firooz Golkar indicated that Ms. Pitre could perform a range of light exertional work, including occasionally lifting twenty pounds, frequently lifting ten pounds, standing and/or walking for up to six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday. Tr. at 194. Based on

these determinations, Dr. Golkar determined that Ms. Pitre was not physically disabled. Tr. at 198.

Second, after reviewing Ms. Pitre's medical record, Dr. Henry Scovern also determined that Ms. Pitre could perform a range of light exertional work, including occasionally lifting twenty pounds, frequently lifting ten pounds, standing and/or walking for up about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday. Tr. at 177.

Third, after reviewing Ms. Pitre's medical record, Dr. Christopher Leveille, Psy.D., determined that Ms. Pitre had only a mild restriction in daily activities, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. Tr. at 192. Dr. Leveille concluded that the alleged severity of impairments was out of proportion to the objective findings. Tr. at 193.

Fourth, after reviewing Ms. Pitre's medical record, Dr. Warren Leib, PhD., determined that Ms. Pitre was not significantly limited in her ability to remember locations and work-like procedures, was not significantly limited in her ability to remember short and simple instructions, and only moderately limited in her ability to understand and remember detailed instructions. Tr. at 178. He also determined that Ms. Pitre was moderately limited in her ability to carry out detailed instructions, maintain concentration for extended periods of time, and her ability to complete a normal workday and week without psychological interruption, while she was not significantly limited in her ability to carry out short and simple instructions, perform activities within a schedule, sustain a normal routine, work in coordination or proximity to others, and make work-related decisions. Tr. at 178–79. Finally, Dr. Leib concluded that Ms. Pitre did not have any social interaction or adaptation limitations. Tr. at 179.

Even when a treating physician's opinion is not given controlling weight, "regulations require the ALJ to consider several factors in determining how much weight it should receive." *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(d)(2)). But it is "within the province of the ALJ to credit portions of a treating physician's report while declining to accept other portions of the same report, where the record contain[s] conflicting opinions on the same medical condition." *Pavia v. Colvin*, No. 6:14-cv-06379 (MAT), 2015 WL 4644537, at *4 (W.D.N.Y. Aug. 4, 2015) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)). "When other substantial evidence in the record conflicts with the treating physician's opinion, however, that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell*, 177 F.3d 128 (citing 20 C.F.R. § 404.1527(d)). Thus, some findings are "reserved for the commissioner," *see* 20 C.F.R. § 404.157(e)(1), "including the ultimate finding of whether a claimant is disabled and cannot work." *Snell*, 177 F.3d at 133.

Here, the substantial evidence in the record does not conflict with the treating physician's opinion. Rather, the other evidence further clarifies Ms. Pitre's vocational physical capacity. Because of the limitations in Dr. Chang's opinion, the ALJ properly looked to alternative medical sources within the record for the residual functional capacity determination. In addition, because "the ultimate finding of whether a claimant is disabled and cannot work" rests with the Commissioner, *see Snell*, 177 at 133, the ALJ's evaluation is consistent with the both the law and substantial evidence in this case. The ALJ therefore did not violate the treating physician's rule in its evaluation of Ms. Pitre's disability claim.

C.     ALJ Assessment of Conflicting Evidence in the Record

An ALJ's decisions are reviewed "to determine whether they are supported by substantial

evidence." *Snell*, 177 F.3d at 132 (citing 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991)). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This Court has limited jurisdiction to review the Commissioner's conclusion. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.").

Ms. Pitre argues that the ALJ does not understand Gitelman Syndrome and its effect on Ms. Pitre's life. She asserts that the ALJ discounted the seizures, incapacitation, and emergency room trips caused by Gitelman Syndrome. Ms. Pitre also contends that the ALJ lacked an understanding of Ms. Pitre's hip and lower extremity issues. While she can still drive a car, go to school, read, watch television, and use a computer, Ms. Pitre alleges that her ability to engage in these daily activities does not diminish her credibility on the severity of her alleged disability. Finally, Ms. Pitre argues that the combination of her impairments must be considered together in order for the ALJ to make a proper determination. And the ALJ should have found Ms. Pitre's history of unremitting pain to be disabling.

In response, the Commissioner argues that the ALJ found that Ms. Pitre's statements concerning her symptoms were not entirely consistent with the evidence in the record. Based on statements from her social worker that Ms. Pitre liked to be sick, medical records indicating that her issues were more functional than structural, and that Ms. Pitre was able to engage in normal activities—such as attending church, graduating from community college, maintaining several jobs, reading, shopping, using the internet, and watching television, the ALJ gave greater weight to evidence outside of Ms. Pitre's subjective accounts. Within that decision, the ALJ made a

credibility determination, and the Commissioner argues that such determinations are entitled to deference.

The Court agrees.

There is nothing in the record to indicate that the ALJ's conclusion was unreasonable. First, "[c]redibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997). Second, within the contours of disputed medical interpretations, the ALJ may conclude that one medical source is more credible than another. *See Cage*, 692 F.3d at 122 ("In our review, we defer to the Commissioner's resolution of conflicting evidence."); *Matta*, 508 F. App'x at 56 (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

Here, the ALJ's credibility determinations are reasonable. As discussed above, the ALJ evaluated medical records from Doctors Dahl,[5] Kadimi,[6] and Sidana,[7] and reviewed a treating source statement from Dr. Chang.[8] Mr. Pitre also testified extensively about her ailments and her typical day-to-day activities. Tr. at 95–157. In the Second Circuit, "the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal citations omitted); 20 C.F.R. § 404.1529 ("In

---

[5] *See supra* note 1.
[6] *See supra* note 2.
[7] *See supra* note 3.
[8] *See supra* note 4.

determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . However, statements about your pain or other symptoms will not alone establish that you are disabled.").

Consistent with the Second Circuit's framework, the ALJ evaluated Ms. Pitre's medical records, testimony regarding subjective pain, and the opinion of agency evaluators to make its disability determination. Tr. at 22–24. The ALJ's resolution of any conflicting or compounding evidence therefore was reasonable.

### D. Step Three Analysis

For a Step Three analysis, the ALJ must determine "based solely on medical evidence, the claimant has had an impairment which is listed in Appendix 1 of the regulations." *Nelson v. Berryhill*, No. 16-cv-02052 (VLB), slip op. at *5 (D. Conn. Mar. 1, 2018) (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)). If the claimant's impairment or combination of impairments reach the threshold criteria of 20 C.F.R. § 404.1409 and the duration requirement of 20 C.F.R. § 416.909, the claimant is considered disabled.

Ms. Pitre argues that the ALJ failed to ask her health care providers specific questions to determine if her conditions met the listed criteria by the Social Security regulations. Ms. Pitre also asserts that the ALJ made no effort to establish whether her conditions are of equal severity to the listed impairments in the Social Security regulations.

In response, the Commissioner argues that the Ms. Pitre failed to meet her burden in showing that her pain met the requirements of a major weight-bearing joint issue under the Social Security regulations. In support, the Commissioner cites x-rays and magnetic resonance

images ("MRIs") that were normal,[9] indicating that Ms. Pitre did not meet the conditions

required by the Social Security regulations for physical disabilities. Moreover, the Commissioner

argues that after reviewing Ms. Pitre's daily living, social functioning, maintenance of

concentration, episodes of decompensation, and the opinion of agency psychiatric experts, the

ALJ properly determined that Ms. Pitre's mental impairments do not meet the disability

threshold.

     The Court agrees.

     According to Social Security regulations, "the third inquiry is whether, based solely on

medical evidence, the claimant has an impairment which is listed in Appendix 1 of the

regulations." *Talavera*, 697 F.3d at 151. "The claimant has the general burden of proving that he

or she has a disability within the meaning of the Act," *see Burgess*, 537 F.3d at 128, and "bears

the burden of proving his or he case at steps one through four" of the five-step framework

established by the social security regulations. *Butts v. Barnhart*, 388 F.3d 377, 383 (2d

Cir. 2004). An ALJ's decision will be affirmed, so long as "the evidence of record permits us to

glean the rationale of an ALJ's decision." *Mongeur*, 722 F.2d at 1040; *Chichocki v. Astrue*, 729

F.3d 172, 178 n.3 (2d Cir. 2013). Here, Ms. Pitre argues that the ALJ improperly accounted for

both her physical and mental impairments in his analysis of the Social Security regulations.

### 1.     Physical Impairments

     To find physical disability, Social Security regulations require:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross
> anatomical deformity (e.g., subluxation, contracture, bony or fibrous
> ankylosis, instability) and chronic joint pain and stiffness with signs of
> limitation of motion or other abnormal motion of the affected joint(s), and
> findings on appropriate medically acceptable imaging of joint space
> narrowing, bony destruction, or ankylosis of the affected joint(s). With: A.
> Involvement of one major peripheral weight-bearing joint (i.e., hip, knee,

---

[9] Tr. at 666, 720, 723–24, 924, 930–31.

> or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b . . .

20 C.F.R. § 404, Subpart P, App'x 1, § 1.02.

The available medical record, however, does not support a major dysfunction finding. On March 13, 2014, a cervical examination stated that there was "[n]o evidence of fracture or subluxation. Prevertebral soft tissues are unremarkable. Alignment [was] within normal limits." Tr. at 666. On June 9, 2014, an MRI revealed that "disc spaces appear[ed] to be preserved without disc herniation." Tr. at 724. On June 15, 2014, a physical examination indicated that Ms. Pitre's "[l]egs [were] not dislocated or swollen," Tr. at 721, and "[no] joint or bony abnormalities." Tr. at 730. On October 22, 2014, an MRI of Ms. Pitre's spine found an "unremarkable" alignment, a "[n]ormal in height" vertebral bodies, "[n]o evidence of compression, a "normal" bone marrow, "[n]o aggressive marrow signal changes, "normal" soft tissue, a "normal" spinal cord, and "[n]o significant disc bulges." Tr. at 930. In addition, two state agency physicians concluded that Ms. Pitre was not disabled. Tr. at 177, 198.

Based on the record evidence, the ALJ's conclusion therefore was reasonable.

### 2.   Mental Impairments

To find a mental disability, the Social Security regulations require that "disorders are characterized by a clinically significant decline in cognitive functioning." 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.02. The regulations call for an analysis of memory, cognitive functioning, speech, perception, judgment, and insensitivity to social standards, among other considerations. *Id.* Although Ms. Pitre argues that the ALJ erred in concluding that she did not have an impairment or combination of impairments that satisfies the severity requirement of one of the listed impairments in the regulations, the record indicates otherwise.

Here, the ALJ's evaluation of Ms. Pitre's alleged neurocognitive disorders was reasonable. According to the record, Ms. Pitre suffers from a learning disability, anxiety, and seizures. Tr. at 169. After reviewing Ms. Pitre's medical record, Dr. Leveille concluded that the alleged severity of impairments was out of proportion to the objective findings. Tr. at 193. And Dr. Leveille determined that Ms. Pitre's alleged disorders only led to mild restriction in daily activities, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. Tr. at 192.

Dr. Leib's analysis of Ms. Pitre's medical record supported this finding. He determined that Ms. Pitre was only moderately limited in her ability to carry out detailed instructions, maintain concentration for extended periods of time, and her ability to complete a normal workday and week without psychological interruption, while she was not significantly limited in her ability to carry out short and simple instructions, perform activities within a schedule, sustain a normal routine, work in coordination or proximity to others, and make work-related decisions. Tr. at 178–79.

Ms. Pitre's own testimony also supports the reasonableness of the ALJ's findings. Ms. Pitre testified at her hearing of working as a babysitter for two local boys, attending church, volunteering for child care at church, watching television, using the computer, and reading. Tr. at 151–56. There is also no evidence that she has experienced extended episodes of decompensation. When the medical records are coupled with Ms. Pitre's own testimony, the ALJ's conclusion that Ms. Pitre did not meet the 12.02 listing is both reasonable and supported by the substantial evidence in the record.

Based on the record evidence, the ALJ's conclusion therefore was reasonable.

### E.     ALJ Vocational Findings

Ms. Pitre argues that the ALJ's vocational findings were flawed because the hypotheticals proposed to the vocational expert did not encompass Ms. Pitre's precise symptoms. According to Ms. Pitre, because the question posed inaccurately portrayed her physical and mental impairments, the hypothetical was used in error.

In response, the Commissioner argues that hypotheticals can be used for vocational findings, so long as those hypotheticals are supported by the substantial evidence in the record and reflect the claimant's limitations. The Commissioner argues that the residual functional capacity assessment allowed the ALJ to conclude that Ms. Pitre was able to balance, stoop, kneel, crouch, and climb stairs or ramps frequently, while climbing and crawling sometimes, which makes the hypothetical proposed to the vocational expert permissible. Moreover, even if Ms. Pitre was unable to balance, kneel, crouch, crawl, or climb, none of the jobs proposed by the vocational expert require those activities, so any error was harmless.

The Court agrees.

Step Five of the disability analysis shifts the burden to the Commissioner "to show there is other work that [the claimant] can perform." *Brault v*, 683 F.3d at 445. "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence, and accurately reflect the limitations and capabilities of the claimant involved." *Calabrese v. Astrue*, 358 F. App'x. 724, 276 (2d Cir. 2009) (summary order) (internal citations omitted). To meet the burden of Step Five under the Social Security regulations, "[t]he Commissioner need show only one job existing in the national economy that [Claimant] can perform." *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) (citing 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b)).

Here, the residual functional capacity determination by Dr. Golkar stated that Ms. Pitre could frequently climb ramps or stairs, balance, stoop, kneel, or crouch, while occasionally climbing or crawling. Tr. at 194–95. Based on this assessment, the ALJ asked a vocational expert whether someone fitting Ms. Pitre's medical profile would be able to perform her past work as a daycare worker, which she could not. Tr. at 160. Alternatively, the vocational expert testified that someone fitting Ms. Pitre's medical profile would be able to find a number of jobs in the national and regional economy. Tr. at 160–61. For example, there are 3,356 available jobs in Connecticut and 214,689 available jobs nationally for a price maker; 345 available jobs in Connecticut and 22,112 jobs nationally for a hand packager; approximately 361 available jobs in Connecticut and 5,244 available jobs nationally for an electrical assembler. Tr. at 161.[10]

Given the residual functional capacity assessment of Dr. Golkar and the close nexus between that assessment and the ALJ's vocational hypotheticals, the ALJ's vocational findings were proper.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Ms. Pitre's motion to reverse the Commissioner's decision and **GRANTS** Commissioner's motion to affirm the  decision.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of March 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[10] Ms. Pitre's brief cites cases suggesting that the national job numbers for a hand packer or electrical assembler may be insufficient. *See* Memo. Of Law at 21 n.46. Courts, however, "have generally held that what constitutes a 'significant' number is fairly minimal." *Fox v. Comm'r of Soc. Sec.*, Civ. No. 6:02–CV–1160 (FJS/RFT), 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009); *see also Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 53–54 (2d Cir. 2016); *see also Dumas v. Schweiker*, 712 F.2d 1545, 1553–54 (2d Cir. 1983) (noting that "that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive.") (citing 42 U.S.C. §§ 405(g), 1383(c)(3)). In any event, there are a sufficient number of price maker jobs.